A. COHEN v. THE ST. LOUIS, FORT SCOTT & WICHITA RAILROAD COMPANY.

1. RAILROAD RIGHT-OF-WAY, *Without Condemnation; Remedy.* Where a railroad company has constructed and is operating its railroad through a piece of land belonging to another, without having obtained a right-of-way by any formal condemnation proceedings, and without having procured any title to the land over which it operates its railroad or any easement therein, the owner of the land may waive formal condemnation proceedings and all formal modes of transfer, and elect to regard the action of the railroad company as taking the property under the right of eminent domain, and may commence an ordinary action to recover compensation for all the damages which he has sustained by reason of the permanent taking and appropriation of the right-of-way by the railroad company.

2. RIGHT-OF-WAY; *Abandonment; Reversion.* Where a railroad grade has been constructed and afterward abandoned, it becomes the property of the owner of the land through which it is constructed; and if another railroad company afterward takes possession of such grade, and permanently appropriates the same to its own use, it should pay as compensation to the owner of the land the value of the land taken as enhanced by such grade.

3. —————— *Possession; Trespass; Compensation.* Where a railroad company takes possession of a strip of land and constructs a railroad track thereon, with the consent of a person in possession of the land, claiming title thereto, and who has color of title, and afterward the paramount owner of the land commences an action against the railroad company for compensation and damages as for the permanent taking and appropriation of the land for railroad purposes, the railroad company will not be considered as a mere trespasser on the land, and will not be required to pay for improvements made thereon by itself, but will be required to pay only the value of the land taken at the time it was taken, and the damages to the land not taken.

4. —————— *Possession; Agency.* And such will be the case where the person in possession claims title under a void or voidable tax deed which is recorded, and also holds a mortgage, past due, upon the land, and is also agent for the paramount owner of the land for the purpose of taking care of the land and renting it and receiving the rents.

5. —————— *Interest on Damages.* Where a railroad company has taken and appropriated a strip of land for a right-of-way, and afterward the owner sues the railroad company to recover compensation and damages as for the permanent taking and appropriation of the land, the owner may recover interest, or damages in the nature of interest, on the amount that should be allowed him from the time of the taking and appropriation of the land up to the time of the trial.

6. REFEREE; *Findings, when Conclusive.* Where a case has been tried by a referee, and the referee has made special findings of fact, and the district court has confirmed his report, and rendered judgment in accordance with the findings of fact, and the plaintiff in error in the supreme court does not question the correctness of the findings of fact, and the defendant in error has filed no petition in error or cross-petition in error, the supreme court cannot at the instance of the defendant in error examine the evidence to determine whether the findings of fact are sustained by sufficient evidence, or not.

7. PRACTICE *in Supreme Court.* Where a case has been tried by a referee, and the referee has made special findings of fact, and the district court has confirmed the report of the referee in all particulars except as to two conclusions of law, and has set aside the report of the referee as to such conclusions, and the plaintiff in error complains of this last-mentioned ruling, and of it only, and the defendant in error has not filed any peti-

tion in error or cross-petition in error, and the supreme court reverses the district court as to one of such conclusions, the supreme court cannot then, at the instance of the defendant in error, set aside the findings of fact which make this conclusion of law material, where there seems to be sufficient evidence to sustain such findings of fact, although the preponderance of the evidence may seem to be against such findings.

### *Error from Bourbon District Court.*

ACTION brought by *Cohen* against *The Railroad Company,* to recover $28,700, with interest from October 1, 1880, as damages for the permanent taking and appropriation of a strip of land through the plaintiff's premises for a right-of-way for railroad purposes. Judgment for plaintiff for $2,195, at the May Term, 1884. *Cohen* brings the case here. The opinion contains a sufficient statement of the facts.

*J. D. McCleverty,* for plaintiff in error.

*Blair & Perry, J. H. Sallee,* and *J. H. Richards,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by A. Cohen in the district court of Bourbon county, on November 17, 1881, against the St. Louis, Fort Scott & Wichita Railroad Company, to recover $28,700, with interest from October 1, 1880, as damages for the permanent taking and appropriation by the defendant, on or about October 1, 1880, of a strip of land through the plaintiff's premises for a right-of-way, and for railroad purposes. The case was tried before a referee. His report is dated March 28, 1884, and was filed in the district court on May 22, 1884. The report shows that the referee found in favor of the plaintiff and against the defendant, and assessed the plaintiff's damages as follows:

For the value of the strip of land taken by the defendant, exclusive of the old railroad grade................................ $195 00
For the value of the old railroad grade taken and appropriated by the defendant, exclusive of the land......................... 3,539 32
For the value of the new railroad grade constructed by the defendant itself................................................. 2,050 98
For the value of the hewed ties put upon the railroad bed by the defendant.............................................. 1,491 10

| | | |
|---|---:|---:|
| For the value of the sawed ties furnished and used by the defendant for a similar purpose.......................................... | $132 | 68 |
| For the value of the railroad track put upon these ties by the defendant............................................................... | 6,146 | 00 |
| For the injury done to the land, outside of the land taken...... | 2,030 | 00 |
| Making a total of............................................... | $15,585 | 08 |

The plaintiff, however, asked in his petition for only $2,000, as injury to his land outside of the land taken, and therefore the referee recommended that $30 of the above amount be deducted, and that judgment should be rendered in favor of the plaintiff and against the defendant for $15,555.08. A motion was made by the defendant to set aside the report of the referee and for a new trial, and a motion was made by the plaintiff to confirm the report of the referee and for judgment thereon, and the motions were heard together, and the court partly overruled and partly sustained each motion, and rendered judgment in favor of the plaintiff and against the defendant for $2,195. This judgment was intended to cover the value of the strip of land taken by the defendant and the damages to the land outside of such strip, and the court refused to render judgment for the value of the old grade, or the value of the new grade, or the value of the cross-ties or iron, or other material furnished and used by the defendant itself in constructing its railroad track. Both parties excepted to this judgment, and saved proper exceptions not only to the judgment itself, but to all the various rulings of the court below against each of them respectively. The defendant claims that this judgment furnished more than ample compensation to the plaintiff for all damages which he sustained; and the defendant refers to the fact that the entire land, six hundred acres, was sold in February, 1882, by the plaintiff to the present owner for $6,500, the plaintiff reserving the right to recover compensation from the railroad company for all damages to the land by reason of the railroad company's appropriation of the right-of-way over the same; and the fact that the present owner testified on the trial that the injury to the land by reason of the construction and operation of the railroad through it was only about $100. The plaintiff, how-

ever, is not satisfied with the judgment rendered in his favor by the court below, claiming that it is rendered for too small an amount, and he now brings the case to this court for review.

The plaintiff relies for a reversal of such judgment upon the findings of fact made by the referee, claiming that such findings authorize and require a judgment vastly greater in amount than the one rendered by the court below. He claims that the judgment should have been rendered for the full amount of the damages found by the referee, together with interest on the same from the time of the taking of the property by the railroad company, to wit, October 1, 1880, up to the time of the finding by the referee. This would make the judgment amount to over $19,000. The defendant, however, calls in question and controverts the correctness of several of the findings of the referee, claiming that they are not authorized by the evidence and should be virtually ignored. This claim of the defendant seems to be well founded as to some of the findings complained of; but as the defendant has not filed any petition in error nor cross-petition in error in this court, the question arises: To what extent can we examine the evidence to see whether the findings are warranted by the evidence or not?

It seems to be admitted by the parties that an action of this kind may be maintained; or, in other words, it seems to be admitted that where a railroad company has constructed and is operating its railroad through a piece of land belonging to another, without having first obtained a right-of-way by any formal condemnation proceedings, and without having procured any title to the land or any easement therein, the owner of the land may waive formal condemnation proceedings, and all formal modes of transfer, and elect to regard the action of the railroad company as taking the property under the right of eminent domain, and may commence an ordinary action to recover compensation for all the damages which he has sustained by reason of the permanent taking and appropriation of the right-of-way by the

1. Right-of-way, without condemnation; remedy.

railroad company.   We think such an action may be main-
tained.   (*C. B. U. P. Rld. Co. v. Andrews*, 26 Kas. 703, 710,
*et seq.; Parsons Water Co. v. Knapp*, 33 Kas. 752; *The U. S.
v. G. F. Man'g Co.*, 112 U. S. 645; same case, 5 Sup. Ct.
Reporter, 306; same case, 17 Chicago Legal News, 169.)

The plaintiff presents the following questions to this court
as being involved in this case, and with regard to which he
claims the court below erred :  (1.)  Is the owner of land through
which a railroad grade has been constructed and afterward
abandoned, entitled to compensation for such grade from an-
other railroad company, which afterward takes possession of
the grade and permanently appropriates the same to its own
use?   (2.)  Where a railroad company has taken possession of
a strip of land, and constructed a railroad track thereon, with-
out any formal condemnation proceedings therefor, and with-
out procuring any title thereto or easement therein from the
owner of the land, is such owner, in an action brought by him
against such railroad company to recover damages for the per-
manent taking and appropriation of such strip, entitled to re-
cover for all the materials and work furnished by the railroad
company itself, and used in the construction of its railroad
track?   (3.)  Is a land-owner, in an action brought by him-
self against the railroad company to recover damages for the
permanent taking and appropriation of a right-of-way through
his land, entitled to any interest upon the amounts allowed as
damages; and if so, is he entitled to interest from the time of
the taking of the right-of-way by the railroad company?

The first question, we think, must be answered substantially
in the affirmative.   When the old grade in the present case was
constructed by the first railroad company and abandoned, such

2. Abandonment
of right-of-
way;
reversion.

grade became the absolute property of the land-
owner; and he had the right to use it for any
purpose which he might choose, or to sell it for
any purpose which he might choose, or for which it might or
could be used; and under the laws of this state other persons
or corporations as well as the defendant might have used it;
for under the laws of this state there is no limit upon the

building of railroads, or upon the incorporation and organiza-
tion of railroad companies; and if any other person or cor-
poration than the owner of the land had afterward entered
upon the land and procured a right to such grade by virtue of
condemnation proceedings, or *quasi* condemnation proceedings,
as in the present case, the owner would have the right to re-
cover from such person or corporation the full value of the
land taken, including the value of the grade, for whatever
purpose the land or the grade might or could be used. This
proposition, we think, is founded in reason, and sustained by
the authorities — among which are the following: *King v. M.
U. Rly. Co.*, 32 Minn. 224; same case, 20 N. W. Rep. 135;
*St. L. J. & O. Rld. Co. v. Kirby,* 104 Ill. 345; *Scheller DeBoul
v. F. & M. R. Rly. Co.*, decided by Sup. Ct. of Illinois, No-
vember 17, 1884; *Goodin v. C. & W. Canal Co.*, 18 Ohio St. 169.

Of course the owner of the land has no right to recover the
amount of the *cost* of making such a grade, or the amount
which the grade actually did *cost*, or the *benefit* which the
land or the grade would be to the railroad company; for such
is not the proper measure of his damages. (*B. R. & M. Rld.
Co. v. Barnard*, 16 N. Y. S. C. [9 Hun,] 104; *S. R. & D.
Rld. Co. v. Keith*, 53 Ga. 178; 3 Sutherland on Damages, 462,
*et seq.*) But, as before stated, he is entitled to recover *the
exact market value of the land upon which the grade is con-
structed,* for whatever purpose such land might or could be
used. If the grade could be used for railroad purposes, and if
the land was more valuable for railroad purposes than for
any other purpose, and if the grade enhanced the value of the
land for railroad purposes, then the enhanced value of the
land for railroad purposes should be taken into consideration.

The next question raised by the plaintiff is, whether the
railroad company must be required to pay to the owner of
the land the value of all the work and materials
which it itself furnished in constructing its rail-
road track across the plaintiff's land. This work
and these materials are of the value of $9,820.76.
This question we think must be answered in the nega-

3. Company not
to pay land
owner for
work, etc.,
done by it-
self.

tive.   Of course it must be admitted that where a mere wrong-doer, a naked trespasser, enters upon the land of another, and makes improvements thereon of a permanent character, such improvements become the property of the land-owner; and this will apply to railroad companies as well as to others.   If a railroad company should enter upon the land of another, without any color or claim of right or privilege, as a mere wrongdoer, a naked trespasser, and construct a railroad track on such land, such railroad track would of course become the property of the land-owner.   (*Graham v. C. & N. C. J. Rld. Co.*, 36 Ind. 463; same case, 10 Am. Rep. 56; *Matter of L. I. Rld. Co.*, 6 N. Y. Sup. Ct. 298; *Hunt v. M. P. Rly. Co.*, 76 Mo. 115; *Price v. W. Ferry Co.*, 31 N. J. Eq. 31; *Meriam v. Brown*, 128 Mass. 391; *U. S. v. Land in Monterey Co.*, 47 Cal. 515; *Kimball v. Adams*, 9 N. W. Rep. 170.)   But neither the foregoing principles nor the above authorities apply to the present case.   The railroad company in the present case was not a wrongdoer nor a trespasser in any sense.   It was a duly-organized railroad company under the laws of Kansas, and had a right to build its railroad across the plaintiff's land, provided, of course, that it first procured the right-of-way from the owner of the land; and it had the right to procure such right-of-way by condemnation proceedings, as the repre-sentative of the sovereign authority, the state of Kansas; for the operation of a railroad is everywhere considered and held to be a public purpose, and the statutes of Kansas authorize such condemnation proceedings.   And the railroad company took possession of the land for its right-of-way and appro-priated the same to its own use *with the consent* of the only person who had the possession of the land, and the only per-son who seemed at the time to be the owner thereof.   This person was B. F. Files.   He had the unquestioned possession of the land and claimed title thereto, and claimed the land as his own.   He had tax deeds on all the land through which the defendant's railroad was constructed, and such tax deeds were duly recorded.   It is true that these tax deeds were voidable for two or three reasons at the instance

4. Possession; agency.

of the plaintiff, the original and paramount owner of the land, but they were probably only voidable. But even if void, still a person holding the possession of land under a void tax deed is not a trespasser, but may make improvements on the land, and may recover compensation from the paramount owner for such improvements under the occupying-claimant law. (*Stebbins v. Guthrie*, 4 Kas. 353, 366, 367; *Smith v. Smith*, 15 id. 290; *Millbank v. Ostertag*, 24 id. 462, 466.) Files also owned a mortgage, past due, on one quarter-section of the land. Files was also the agent of the plaintiff for the land, authorized to take care of it, and to rent it, and to collect the rents, and to treat the land substantially as his own; and he did treat the land as his own and claimed title thereto; and the evidence shows that he entered into a duly acknowledged written contract with the railroad company for the sale and conveyance of a right-of-way through at least one quarter-section of the land, and the railroad company got permission of Files, either orally or in writing, to enter upon and procure the right-of-way through the other quarter-section, and to construct its railroad track thereon. The findings of the referee would seem to indicate that the whole of the contract between Files and the railroad company was in parol, but the evidence shows as we have stated. Under such circumstances, the railroad company was neither a wrongdoer nor a trespasser, although it may be admitted that it did not procure any legal and indefeasible title to or easement in its right-of-way. Nor has the plaintiff treated the railroad company as a trespasser. He has allowed the company to retain its right-of-way, as a permanent easement, and simply sues it for compensation and damages. If the plaintiff really supposed that the railroad company was a mere naked trespasser on his land, why did he not commence an action of ejectment to oust it from his premises? He had his election. But he did not choose to treat the railroad company as a trespasser, but elected to ratify and confirm the railroad company's selection of his land for a permanent right-of-way, and simply brought this action to recover such compensation or damages as he would recover

in an ordinary condemnation proceeding. Under such circumstances, the railroad company will not be required to pay for the improvements which it itself made upon the land, but will be required to pay only the value of the strip of land which it appropriated and the damages to the other land; and this value and these damages will be computed as of the time when the railroad company first took possession of said strip and occupied the same as its right-of-way. This we think is founded in reason and sustained by the weight of authority. (*C. B. U. P. Rld. Co. v. Andrews*, 26 Kas. 702, 710, 711; *Justice v. N. V. Rld. Co.*, 87 Pa. St. 28; same case, 18 Alb. L. J. 171; *B. R. & M. Rld. Co. v. Barnard*, 16 N. Y. S. C., [9 Hun,] 104; *C. P. Rld. Co. v. Armstrong*, 46 Cal. 35; *Daniels v. C. I. & N. Rld. Co.*, 41 Iowa, 52; *Lyon v. C. B. & M. Rld. Co.*, 42 Wis. 533; *Greve v. First Div. St. P. & P. Rld. Co.*, 26 Minn. 66; *Morgan v. C. & N. E. Rld. Co.*, 39 Mich. 675; *Dietrich v. Murdock*, 42 Mo. 279; *N. C. Rly. Co. v. The Canton Co. of Baltimore*, 30 Md. 347; *Pitkin v. Springfield*, 112 Mass. 509.)

It has even been held that where a railroad company enters upon land as a technical trespasser, and afterward procures the land for its right-of-way by condemnation proceedings, it is not compelled to pay for the improvements which it itself made upon the land while it was technically a trespasser, and before it legally procured its right-of-way. (*Justice v. N. V. Rld. Co.*, 87 Penn. St. 28; same case, 18 Alb. L. J. 171; *Daniels v. The C. I. & N. Rld. Co.*, 41 Iowa, 52; *Lyon v. The C. B. & M. Rly. Co.*, 42 Wis. 538; *Greve v. First Div. St. P. & P. Rld. Co.*, 26 Minn. 66.) This seems like justice; but whether it is or not, surely where a railroad company enters upon a piece of land for the purpose of constructing a railroad track, and does so under the honest belief that it has a right to do so, and expends thousands of dollars thereon under such belief, and no person objects to its occupancy, or questions its right, while it is expending its money making improvements on the land, and where the paramount owner of the land afterward treats

the railroad company, not as a trespasser upon his land, but as a party which has in fact procured a permanent right-of-way over the land, and upon such theory sues the railroad company merely for the damages resulting from the permanent taking of the right-of-way, including the value of the land taken, and the permanent damages to his other property, he cannot say that the railroad company was at any time a mere trespasser; and he can recover only for the value of the land taken, and the damages to that not taken at the time when the railroad company first entered upon his land, and occupied the same for the purpose of procuring a right-of-way. See the authorities above cited, and especially the reasoning in the case of the *C. B. U. P. Rld. Co. v. Andrews*, 26 Kas. 711, *et seq.;* and also, with regard to permitting parties to make improvements without objection, see *Reisner v. Strong*, 24 Kas. 410; *Goodin v. C. & W. C. Co.*, 18 Ohio St. 169.

The third and last question raised by the plaintiff is as follows: Where a railroad company has taken actual possession of another's property for a right-of-way, and has continued in such possession, may interest or damages in the nature of interest be allowed upon the amount of the damages sustained from the time the railroad company first took possession of the property up to the time of the trial? We think this question must be answered in the affirmative. (*Hartshorn v. B. C. R. & N. Rld. Co.*, 3 N.W. Rep. 648; *S. C. & C. Rld. Co. v. Brown*, 14 id. 407; *Old Colony Rld. Co. v. Miller*, 125 Mass. 1; *Bangor &c. Rld. Co. v. McComb*, 60 Me. 291; 1 Sutherland on Damages, 604, and cases there cited; 3 Sutherland on Damages, 465, *et seq.*, and cases there cited.) There are exceptions to this rule, as will be seen by an examination of the authorities cited by Mr. Sutherland in his work on Damages; but we do not think that the present case falls within any of the exceptions.

5. Interest on damages.

The defendant also raises several questions. In the first place, it claims that the evidence does not show or prove that the amount of the damages to the plaintiff's farm, outside of

the strip of land taken, was $2,000. We would think, how-
ever, that as the referee found that it was $2,030,
and as the court below rendered judgment for
$2,000 of that amount, and as the defendant has
not filed any petition in error or cross-petition in error in this
court, we cannot examine the evidence to determine whether
it proves that the plaintiff's farm, outside of the strip of land
taken, was damaged to the amount of $2,000, or not. Even
if we should find that it was not damaged to that extent or to
any considerable extent, still we could not, as the case is now
presented, reverse the judgment of the court below for that
reason.

*6. Referee; findings, when conclusive.*

The defendant also claims that the evidence does not prove
that the old grade was worth $3,539.32, the amount which
the referee found that it was worth. Now while the prepon-
derance of the evidence may not sustain this find-
ing, yet we think there was evidence sufficient to
sustain it; and as the court below confirmed the report of the
referee in all particulars, except merely as to two conclusions
of law — the sixth and the seventh — we cannot set aside this
finding, or hold it insufficient. There was evidence tending
to show the amount and nature of the old grade, and taking
the figures and estimate of the witness, McClung, who was a
civil engineer, the old grade would have cost as much as the
referee found its value to be; and the cost of a thing is some
evidence of its value. Besides, the witness Bronson testified
that he would imagine, as guess-work, that the cost of the old
grade was somewhere from $3,000 to $4,000.

*7. Finding, not set aside.*

The defendant also claims that the findings of the referee,
that Files did not execute a written instrument to the rail-
road company for any portion of the right-of-way, and that
the plaintiff had no notice that the defendant took possession
of his land and constructed its railroad over it until long after
the same occurred, are erroneous. In our opinion it is wholly
immaterial whether these finding are correct, or not; and hence
we shall not make any further reference to them.

Sullivan v. Phenix Ins. Co.

The defendant also makes some other complaints, but we do not think that they are material.

The judgment of the court below will be modified by adding to it the value of the old grade as found by the referee, and interest on all the sums allowed by the district court and this court at the rate of seven per cent. per annum from October 1, 1880, the time when the defendant first took possession of the plaintiff's land as a right-of-way.

All the Justices concurring.